UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil No. 08-405-P-H |
| GRANJA PLANALTO, as assignee of AVIAN FARMS, INC., et al., | ) ) ) | |
| Defendants | ) | |

### RECOMMENDED DECISION ON MOTION TO DISMISS

In this declaratory judgment action, the plaintiff, Ohio Casualty Insurance Company, seeks a judgment that the defendant Granja Planalto, as the assignee of its insured, Avian Farms, Inc., breached a condition of its umbrella insurance policy and accordingly cannot recover under it. The plaintiff is a defendant in an earlier-filed reach-and-apply action in this court wherein Granja Planalto seeks to collect insurance proceeds under the same policy, *see Granja Planalto v. Ohio Casualty Ins. Co.*, Civil No. 07-142-P-H.

Granja Planalto now moves to dismiss this action, contending that Ohio Casualty's claim in this action is a defense or compulsory counterclaim in the earlier pending action, that it did not acquire any of Avian Farms's obligations under the terms of the assignment it took, that the terms of the insurance contract on which Ohio Casualty relies are not applicable to its reach-and-apply claim, and/or that this court has already ruled against Ohio Casualty in the earlier action on the claim that it asserts here. Motion to Dismiss ("Motion") (Docket No. 8) at 3-16. As a final

alternative, Granja Planalto asks this court to decline to entertain this action in the exercise of its discretion. *Id*. at 16-17.

I recommend that Granja Planalto's motion to dismiss be denied.

## I. Applicable Legal Standard

The motion invokes Fed. R. Civ. P. 12(b)(6). Motion at 1. As the Supreme Court recently has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[1]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id*. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

---

[1] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

2

In this case, Granja Planalto asserts that "this Court should take judicial notice of everything that has transpired in the pending Reach and Apply Action" because "the propriety of this Declaratory Judgment Action is dependent upon the pending case to which it relates." Motion at 3. Ohio Casualty apparently agrees with this approach, as it cites to documents filed in the earlier action in its opposition to the motion at issue here. Ohio Casualty's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opposition") (Docket No. 9) at 1, 3, 9, 16-18. As the parties suggest, the court may take judicial notice of related proceedings and the records therein. *See Doustout v. G. D. Searle & Co.*, 684 F. Supp. 16, 17 n.1 (D. Me. 1988).

## II. Factual Background

For a full exposition of the disputes between these parties, the reader is directed to the court orders and recommended decisions in Civil No. 07-142-P-H. For purposes of the instant Motion, the following factual allegations from the complaint suffice.

For the period from January 1, 1998, to January 1, 1999, Ohio Casualty extended commercial umbrella insurance coverage to Avian Farms, Inc. under Policy No. UMB 9-06-15-63, with a limit of liability of $20 million per occurrence and in the aggregate. Declaratory Judgment Complaint ("Complaint") (Docket No. 1) ¶ 5. The policy had been issued by an insurer whose obligations Ohio Casualty subsequently assumed. *Id.* ¶ 6.

In 1994, Granja Planalto entered into an agreement with Avian Farms International, Inc. for the purchase of poultry for production in the Brazilian market. *Id.* ¶ 8. Avian Farms, Inc. was the parent company of Avian Farms International, Inc. and Avian Farms (USA), Inc. *Id.* ¶ 9. In 1996, Avian Farms International, Inc. merged into Avian Farms (USA), Inc. *Id.* ¶ 10. All of the Avian entities were insureds under the Ohio Casualty policy. *Id.* ¶ 11.

Avian was a primary breeder of poultry, that is, a breeder at the first stage of the breeding process.  *Id*. ¶ 12.  Primary breeders typically maintain several generations of birds: pedigree, great-grandparent, grandparent, and parent.  *Id*.  Granja Planalto purchased grandparent and parent stock form Avian from 1994 until August 1999.  *Id*. ¶ 13.  On June 9, 2000, Cobb-Vantress, Inc. entered into an agreement with Avian to purchase the bulk of Avian's assets.  *Id*. ¶ 14.  On June 28, 2000, Avian entered into an assignment for the benefit of creditors with Development Specialists, Inc. ("DSI"), by which DSI agreed to liquidate Avian's remaining assets and distribute the proceeds to creditors of Avian.  *Id*. ¶ 15.

In May 2001, Granja Planalto commenced an action against Avian seeking to recover damages it allegedly sustained from 1995 to 2001, because the grandparent and parent stock produced by Avian purportedly carried the avian leukose virus, subgroup J.  *Id*. ¶ 16.  On or about September 10, 2002, Granja Planalto and DSI entered into an agreement and covenant not to execute whereby DSI assigned to Granja Planalto "any and all rights of [DSI] or Avian . . . under any contract of insurance relating in any way to the claims asserted by Granja Planalto against Avian [.]"  *Id*. ¶ 17.

On May 13, 2003, Granja Planalto provided Ohio Casualty with its first notice of Granja Planalto's claims in the 2001 action.  *Id*. ¶ 19.  At the time, Avian was being provided with a defense by Chubb Insurance Group and Hanover Insurance Company, two of its primary carriers.  *Id*.  On June 30, 2003, counsel for Ohio Casualty issued correspondence accepting the notice subject to a reservation of rights.  *Id*. ¶ 20.

From November 2003 through March 2004, Granja Planalto, as Avian's assignee, engaged in substantive settlement discussions with Chubb, Hanover, and United States Fire & Casualty Company.  *Id*. ¶ 22.  On or about March 31, 2004, Granja Planalto entered into a

settlement agreement and release with Chubb, Hanover, and U.S. Fire, whereby Chubb and Hanover each paid $750,000 and U.S. Fire was released with no contribution. *Id*. ¶ 24. On June 1, 2005, Granja Planalto entered into a settlement agreement and release with Charter Oak Fire Insurance Company, whereby the insurer paid $225,000. *Id*. ¶ 26. Granja Planalto did not inform Ohio Casualty that it was entering into either of these agreements. *Id*. ¶¶ 25, 27.

A settlement stipulation, of which Ohio Casualty was not informed, was executed between Granja Planalto and Avian on April 5, 2004, in connection with the 2001 action. *Id*. ¶ 28. An order entering default against Avian was presented to the court in the 2001 action and entered on April 13, 2004. *Id*. ¶ 29. Ohio Casualty was not informed of this event. *Id*. A damages hearing in the 2001 action was held on June 7, 2007, of which Ohio Casualty was not informed. *Id*. ¶ 30. The damages hearing was uncontested and resulted in an award of $13,200,000. *Id*. ¶ 31.

### III.  Discussion

#### A.  Defense or Counterclaim

Ohio Casualty's claim in this action is that, when Granja Planalto took an assignment from Avian Farms on September 10, 2002, before the settlements in the 2001 action were executed on March 31, 2004, and June 1, 2005, Granja Planalto acquired the obligation under the language of the umbrella policy to inform Ohio Casualty before executing the settlement agreements and before the damages hearing was held on June 7, 2007. It points to the following policy language:

> SECTION IV – CONDITIONS
> \* \* \*
> C. Duties In The Event of Occurrence, Claim or Suit
> \* \* \*
> 3. We shall have the right and shall be given the opportunity to associate with you and your underlying insurers in the defense and control of any

> occurrence, claim or "suit' that appears likely to involve this policy. In such event you and your underlying insurer shall cooperate with us in the defense of such occurrence, claim or suit.
>
> 4. No "Insured" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.
>
> * * *
>
> D. Legal Action Against Us
> No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "Insured" or to sue us on this Policy unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "Insured" obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the "Insured" and the claimant or claimant's legal representative.

Complaint ¶ 7. Ohio Casualty contends that Granja Planalto's failure to inform Ohio Casualty that Granja Planalto was engaged in substantive settlement discussions with Avian Farms's primary insurers, its entering into settlement agreements with those insurers, its entering into a settlement stipulation with those insurers, its obtaining an entry of default against Avian Farms, and its participation in an uncontested damages hearing in the reach-and-apply action all breached one or more of the quoted terms of the Ohio Casualty policy. Complaint ¶¶ 22-30.

Citing Fed. R. Civ. P. 8, 12 and 13, Granja Planalto asserts that any claim that it failed to comply with an applicable provision of the insurance policy should have been raised in the reach-and-apply action, and accordingly cannot be raised here. Motion at 3-6. However, as Ohio Casualty points out, Opposition at 11-13, Maine law permits the course it has elected here. The statute authorizing reach-and-apply actions includes a list of defenses, 24-A M.R.S.A. § 2904, which the Maine Law Court has held is exclusive. *Michaud v. Mutual Fire, Marine &*

*Inland Ins. Co.*, 505 A.2d 786, 788-89 (Me. 1986).  The defense of breach of the insurance policy by the party seeking to reach and apply the proceeds of that policy is not among those listed in the statute.

In *Amoco Oil Co. v. Dingwell*, 690 F. Supp. 78 (D. Me. 1988), three insurers sought to intervene in an action brought against their insured in this court, and also sought a stay pending adjudication of a "previously filed declaratory judgment action" brought by at least one of the insurers against the insured.  *Id*. at 80.  With the insurers' knowledge, the plaintiffs in the later action and the insured entered into settlement negotiations and eventually signed a settlement agreement.  *Id*.  As is apparently the case in the instant action, the plaintiffs agreed to seek recovery solely against the proceeds of the insurance policies.  *Id*. at 81.  The plaintiffs in *Dingwell* planned to bring a reach-and-apply action against the insurers as soon as a consent judgment was entered in the action in which the insurers sought to intervene.  *Id*. at 82.  Among other avenues still available to the insurers, Judge Carter of this court noted that "[t]he insurers could also raise their cooperation clause defenses in a declaratory judgment action . . ., where all of the necessary parties can participate[.]"  *Id*. at 83.  Accordingly, he denied the motions to intervene.  *Id.*

Granja Planalto contends that the holding in *Dingwell* applies only to a declaratory judgment action brought by an insurer against its insured, rather than against the assignee of its insured.  Defendant Planalto's Reply Memorandum in Support of Motion to Dismiss ("Reply") (Docket No. 10) at 6.  It asserts, without citation to authority, that the separate declaratory judgment action is not available where the parties to the reach-and-apply action are the same as those that would be involved in a declaratory judgment action.  *Id*. at 6-7.  But in this case, it is the assignee that Ohio Casualty contends breached the terms of the applicable policy, not Avian

7

Farms, the original insured. Granja Planalto's argument, if accepted, would deprive the insurer of the opportunity to contest coverage merely because the judgment creditor took an assignment of the insured's interest under the policy before a settlement of the creditor's claim was reached. The case law cannot be stretched so far as in essence to reward such nimble legal footwork. Granja Planalto has cited no authority in support of its assertion, nor has it articulated any policy reason for why such a simple procedural step should allow such a substantive difference in legal rights.

For the same reason, I reject Ohio Casualty's contention that, if this declaratory judgment action is not allowed to proceed, it must be allowed to assert a counterclaim against Granja Planalto in the reach-and-apply action. Opposition at 17-19. If the alleged violation of a term of the policy that voids coverage cannot be raised as a defense in a reach-and-apply action, it cannot be raised as a counterclaim either. To allow the latter while not allowing the former is to make the exclusiveness of the statutory list nothing more than a paper tiger.

Granja Planalto is not entitled to dismissal of this action on this basis.

### B.  Terms of the Assignment

Granja Planalto next attacks the substance of Ohio Casualty's declaratory judgment claim, contending that Avian Farms assigned it only the rights relating to Planalto's claim against it, and not the insurance contract or any obligations Avian Farms might have under the contract. Motion at 10-14. It follows, according to Granja Planalto, that it could not have breached any conditions of the policy. *Id.*

Granja Planalto relies on the following language from the assignment agreement:

> 5. Assignee assigns to Planalto any and all rights of Assignee or [] Avian Farms under any contract of insurance relating in any way to the claims asserted by Planalto against Avian Farms, and only with

8

>respect to such claims.  Assignee retains rights under such policies with respect to any and all claims other than Planalto's claims.

Motion at 13.[2]  This language, it asserts, establishes that it did not assume the contractual obligations that are the basis of Ohio Casualty's claim.  *Id*.

Ohio Casualty responds that the assignment of "any and all rights . . . under any contract of insurance relating in any way to the claims asserted by Planalto against Avian Farms" necessarily includes, as a matter of law, the obligations of Avian Farms under the insurance policies with respect to Granja Planalto's claims against Avian Farms.  Opposition at 4-10.  It cites no authority for this proposition, which it characterizes as "black letter law," but does cite authority from other states for the familiar legal principle that an assignee of an insured "stands in the shoes of an insured[.]"  *Id*. at 5.  But, that general principle cannot be stretched to apply to the specific circumstances present in this case.

The Supreme Court of Iowa did state, in *Kelly v. Iowa Mut. Ins. Co.,* 620 N.W.2d 637 (Iowa 2000), the first case cited by Ohio Casualty, that under Iowa law the claim of an assignee who took from the insured an assignment of "any claims [the insured] had against" his insurer was "subject to any defense that [the insurer] had against its insured."  *Id.* at 640, 641.  But that is not what Ohio Casualty claims in the instant case.  Here, Ohio Casualty claims that, *after* it took the assignment of rights, the assignee was required to perform the obligations of the insured under any insurance policy that related to the claims asserted by Granja Planalto against the insured.

In *Hartman v. United Heritage Prop. & Cas. Co.*, 108 P.3d 340 (Idaho 2005), another case cited by Ohio Casualty, the Supreme Court of Idaho, construing Idaho law, observed that "[t]he insurance company has the same defenses against the assigned claims as it would have if

---

[2] The entire document, entitled Agreement and Covenant Not to Execute, appears as Exhibit 3 to Exhibit G to the Affidavit of James D. Poliquin (Docket No. 29)  in this court's Civil No. 07-142-P-H.

9

they were asserted by its insured." *Id*. at 345. However, in that case, as in *Kelly,* the defense concerned actions taken or not taken by the insured before the assignment, not, as is the case here, actions taken by the assignee after the assignment that the insurer contended breached the policy terms resulting in a lack of coverage.

In *Wilson v. State Farm Fire & Cas. Co.*, 761 So.2d 913 (Miss. App. 2000), an opinion of an intermediate state court construing Mississippi law also cited by Ohio Casualty, the insured assigned his rights and claims under the defendant's insurance policy to the plaintiff, to whom he also sold the real property subject to the policy, after the insurer had denied coverage for fire damage. *Id*. at 914. The court said that the assignee "stands in [the insured's] shoes taking the assignment subject to any and all of the defenses [the insurer] could have asserted against [the insured]." *Id*. at 917. However, again, the defense at issue was an alleged misrepresentation made by the insured in his application for the policy, *id*., not something that the assignee did or failed to do after taking the assignment.

The final case cited by Ohio Casualty, also from Iowa, *Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231 (Iowa 2001), contains language that at first glance appears to support Ohio Casualty's position. In that case, the insured obtained insurance on its property as required by the terms of its mortgage on the property to the plaintiff. *Id*. at 234. A month after the insured closed its business that had been conducted at the insured property, the insured buildings were destroyed or extensively damaged by a windstorm. *Id*. The insured promptly filed a proof of loss with the insurer and then defaulted on the mortgage. *Id*. at 234-35. The mortgage holder then took ownership of the property and sought coverage under the policy. *Id*. at 235. The court treated the mortgage holder as an assignee of the insured. *Id*. The court held that the assignment made the assignee "responsible for proving compliance with the policy terms" and that its right

10

to recover was "subject to any defense [the insurer could] assert against [the insured.]" *Id.* at 238. "Thus, [the assignee] must prove it has satisfied all of the condition precedents" for coverage. *Id.* However, the conditions precedent at issue in that case all predated the "assignment" of the insurance policy that occurred when the insured defaulted on the mortgage. *Id.* at 236-39.

All that being said, however, Ohio Casualty presents a reasonable policy argument, Opposition at 6: if a potential judgment creditor of an insured is allowed to take an assignment of only the insured's right to recover under an otherwise applicable insurance policy, and not its obligations, the assignee would be able to recover under the policy regardless of any breach by the insured or its assignee of any of the insured's obligations under the policy. Insurers would be unable to maintain any defenses against coverage, even when they had no knowledge of the loss, let alone any subsequent settlement negotiations or agreements. In short, on these facts, creditors could always recover from insurers.

Both parties rely on Section 328 of the Restatement (Second) of Contracts. Motion at 12-13; Opposition at 4-5. That section provides:

> Interpretation of Words of Assignment; Effect of Acceptance of Assignment
>
> (1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.
>
> (2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise.

Restatement (Second) of Contracts § 328 (1981).

Granja Planalto contends that the language of the assignment in this case, set forth on page 8, *supra*, does not suggest "an intent to assign any obligation" and that "inferring one defies common sense[,]" because "a plaintiff pursuing a claim against an insured would [not] contractually agree to cooperate with insurers in the defense of that very claim." Motion at 13. But that is not this case. Here, Ohio Casualty claims that Granja Planalto, as Avian Farms' assignee with respect to Granja Planalto's claim, was required to notify Ohio Casualty and obtain its consent before entering into any settlement of that claim. Opposition at 7.[3] Granja Planalto could have done both without assisting Ohio Farms in "defending" its own claim. General tenets of insurance law prohibit an insurer from withholding its consent to a settlement unreasonably. *E.g., Tait v. Royal Ins. Co*, 913 F. Supp. 621, 626 (D. Me. 1996); *see also North River Ins. Co. v. CIGNA Reinsurance Co*., 52 F.3d 1194, 1210 n.21 (3d Cir. 1995) And the timing of the assignment, after all, was controlled by Granja Planalto.

The quoted assignment language assigns to Granja Planalto "any and all rights" of Avian Farms "under any contract of insurance relating in any way to the claims asserted by Planalto against Avian Farms[.]" Motion at 13. This language appears to me to be within the scope of Section 328 of the Restatement. It is an assignment of all of an insured's rights, albeit with respect to a particular claim rather than as to the contract of insurance itself, without language indicating that delegation of unperformed duties with respect to that claim is not intended. The complaint should not be dismissed on the basis of this argument.

Granja Planalto goes on to argue, in the alternative, that, even if it could be deemed to have undertaken a contractual obligation as part of the assignment from Avian Farms, that

---

[3] Ohio Casualty also appears to contend that Granja Planalto breached "various conditions requiring Avian to cooperate with Ohio Casualty[,]" Opposition at 7, but does not specify how that cooperation was to be accomplished, other than by notifying Ohio Casualty of settlement negotiations with the primary carriers and obtaining its consent to any such settlement.

12

obligation does not apply to its reach-and-apply action because the existence of a valid defense to coverage is not a defense to a reach-and-apply action. Motion at 14-15. That is precisely why I have already recommended that the court order that this declaratory judgment action, seeking to assert a defense to coverage, proceed while the earlier action is stayed. *See* Recommended Decision on Defendant's Motion to Stay (Docket No. 99), *Granja Planalto v. Ohio Casualty Ins. Co.*, Civil No. 07-142-P-H.

### C. Res Judicata

Granja Planalto's next argument is that this court has previously ruled that "Ohio Casualty would have had [a full opportunity to participate in the hearing on damages] if it had not chosen to respond to its receipt of adequate notice of the proceeding below by closing its file and ignoring the matter[,]" *id*. at 15, quoting my recommended decision in the reach-and-apply action. Granja Planalto asserts, without citation to authority, that "the claim for breach of the condition of cooperation must fail because Ohio Casualty's conduct in ignoring the case and closing its file as a matter of law released the insured or insured's assignee of such obligations from that point forward." *Id.* Ohio Casualty does not respond directly to these arguments.

First, whether Ohio Casualty had an opportunity to participate in the hearing on damages in the action that preceded the reach-and-apply action is not dispositive of the issue pressed by Ohio Casualty in this action: whether its policy provides any coverage at all for Granja Planalto's claim against Avian Farms. In addition, *res judicata* is not applicable under these circumstances.

> Maine *res judicata* principles provide for preclusion of a litigant's claim if (1) the present action involves the same parties (or privies of those parties) as the prior action; (2) a valid final judgment has been entered in the prior action; and (3) the matters presented for decision in the second action were or might have been litigated in the first.

*Hoffman v. Secretary of State of Maine*, 576 F.Supp.2d 179, 180 (D. Me. 2008) (citation and internal punctuation omitted).

The claim presented in this declaratory judgment action meets neither the second nor the third element of the doctrine. In addition, my observation in the recommended decision on Granja Planalto's motion for partial summary judgment in the reach-and-apply action, that Ohio Casualty would have had a full opportunity to participate in the damages hearing in the underlying state-court action "if it had not chosen to respond to its receipt of adequate notice . . . by closing its file and ignoring the matter[,]" Recommended Decision on Plaintiff's Motion for Partial Summary Judgment ("Recommended Decision") (Docket No. 71) in *Granja Planalto v. Ohio Casualty Insurance Company*, Civil No. 07-142-P-H, at 15, does not create a finding of fact applicable to the instant action, where, *inter alia*, the coverage issue requires evidence of when Ohio Casualty closed its file and whether it received adequate notice of the events for which the terms of the policy required notice. Granja Planalto asks this court to assume too much in connection with its motion to dismiss. The appropriate procedural vehicle for such factual assertions would be a motion for summary judgment.

Granja Planalto's next argument rests on a footnote in my recommended decision in the earlier case. Granja Planalto quotes the footnote out of context. In a discussion of the requirements of the reach-and-apply statute, 24-A M.R.S.A. § 2904, in the recommended decision which the court subsequently adopted, *Granja Planalto v. Ohio Casualty Insurance Company*. Civil No. 07-142-P-H, Docket No. 76, I wrote:

> Because the statute does not require that notice be provided to the insurer by the insured, the defendant's further assertion that "Planalto was obligated, as assignee of Avian, to provide Ohio Casualty with notice of the events in the Underlying action," Summary Judgment Opposition at 12, is incorrect.

Recommended Decision at 12 n.12. Ohio Casualty's invocation of a coverage defense in the reach-and-apply action was incorrect, for a claim brought under the reach-and-apply statute. That is all that the footnote says. It cannot be stretched to constitute a holding that Ohio Casualty could never assert a coverage defense in any other proceeding, based on any other legal theory.

Granja Planalto is not entitled to dismissal of the declaratory judgment on the basis of language in my recommended decision in the reach-and-apply action.

### D. Discretionary Dismissal

Finally, Granja Planalto asks this court to exercise its discretion not to hear this declaratory judgment action, asserting that "the Court should exercise its discretion and refrain from hearing an isolated allegation of breach of a condition in a separate action, when no impediment existed to raising any valid defenses in the already pending proceeding." Motion at 17. For the reasons already discussed, Granja Planalto's premise is faulty. Ohio Casualty could not have raised the coverage issue presented by this declaratory judgment action in the reach-and-apply action. Accordingly, the court should decline Granja Planalto's request to deny Ohio Casualty any forum in which it could argue that there is no coverage under its policy for the claim asserted by Granja Planalto.

### IV. Conclusion

For the foregoing reasons, I recommend that Granja Planalto's motion to dismiss be **DENIED.**

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for***

*which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of March, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge